**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JANET CHRISTINE WOHLER, | ) CASE NO. 1:23-CV-01111-CEH |
| Plaintiff, | ) |
| v. | ) JUDGE CARMEN E. HENDERSON |
| | ) UNITED STATES MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |

**I. Introduction**

Plaintiff, Janet Christine Wohler ("Wohler" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 7). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On April 9, 2015, Claimant filed an application for DIB, alleging a disability onset date of October 21, 2014. (ECF No. 6, PageID #: 41). The application was denied initially, upon reconsideration, and in a December 6, 2017 written decision following a hearing before an administrative law judge ("ALJ"). (*Id.* at PageID #: 41-54). The Appeals Council declined further review and Claimant filed a complaint in this Court challenging the Commissioner's final decision. (*Id.* at PageID #: 26). On March 31, 2020, the Court reversed the decision and remanded the case for further proceedings. (*Id.* at PageID #: 639).

1

Claimant filed a subsequent claim and the State agency found her disabled as of April 24, 2018, such that the period at issue on remand was from the October 21, 2014 alleged onset date until April 24, 2018. (*Id.* at PageID #: 518). The ALJ held another hearing and issued a written decision on December 1, 2020, once again finding Claimant was not disabled during the relevant time. (*Id.* at PageID #: 518-30). Claimant appealed the decision directly to this Court and on October 26, 2021, based on the parties' stipulation, the case was remanded for further proceedings. (*Id.* at PageID #: 907).

On February 6, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, as well as an impartial vocational expert and impartial medical expert testified. (*Id.* at PageID #: 802). On March 7, 2023, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 802-819).

On June 2, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Claimant asserts a single assignment of error: "[t]he ALJ's RFC is contrary to law because it does not accurately describe the full limiting effects of Plaintiff's impairments as established by her testimony, confirmed by the record generally and by opinion evidence." (ECF No. 8 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing as well as her written statements:

> In written statements, the claimant alleged disability due to multiple sclerosis, nystagmus, and double vision (Exhibit 3E). The claimant reported she can vacuum and do the dishes (Exhibit 4E). She is unable to drive on the highway currently due to visual problems. At work, she was having trouble seeing the patient monitor and reading small print. She stated that her eyes shake, and things become blurry. She stated she is legally blind in the left eye and her center field is gone. She struggles

2

> to read fine print on coupons. She stated she cannot do any heavy lifting. She is limited to being able to see the computer, but she has a hard time reading. She has problems with cognitive issues. She is tired, not sleeping well, and she wakes up around 2:30 in the morning. She is having some trouble with names and remembering exactly with whom she has worked. She is concerned that she has made some minor insignificant changes in protocol. The claimant reported that her eyesight has worsened, and she has increased difficulty reading (Exhibit 5E). She has double vision and nystagmus. She reported that new glasses did not work. She reported she has difficulty driving and she is unable to drive at night. She has difficulty reading labels, grocery shopping, following recipes, and cooking. The claimant lives with her family (Exhibit 8E). Her multiple sclerosis has left her with blurry, shaky, swirling, and double vision. This lack of vision makes it difficult to read directions, general location signs, paperwork, and computer work. She cannot see the needle in order to give an injection to start an IV. Recording vitals is difficult when you cannot see the equipment or the patient well. Fatigue and headaches slow her down. She is unable to drive to work. She helps care for her husband and daughter. She has no problems with personal care. Family and friends remind her to take her shots and she uses a calendar with a body chart for injection site recording with reminders from her family. She can prepare cereal, fruit, sandwiches, canned and frozen food, and she uses a slow cooker for stews. She does the laundry, picks up dirty dishes, and weed. She has blurry swirling and double vision, and it restricts her driving. She shops in stores with her husband. She and her husband work together to pay bills. She reads large print books and uses a magnifier for the TV. She spends time with others, and she attends church services. She has problems standing, stair climbing, seeing, memory, completing tasks, concentration, understand, and following instructions. She gets along with authority figures. She gets frustrated when she cannot focus on items or people.
>
> At the February 6, 2023 hearing, the claimant testified she has very poor eyesight, double vision, and she has a hard time seeing things to read. She testified that she did drive during the period in question, but her husband drove most of the time. She testified she did listen to some audio books. She testified that she was limited to cooking during the period in question and that she would just stir the pot on the stove. She testified that her eyes shake back and forth. She testified she had balance problems. She testified she could not lift 20 pounds during the period in question. She testified she could lift about 10 pounds, but it was a challenge.

(ECF No. 6, PageID #: 809-10).

The ALJ also considered hearing testimony from medical expert Dr. Lawrence Schaffzin, which he summarized:

> At the February 6, 2023 hearing, Dr. Schaffzin testified the claimant did not meet or equal a listed impairment during the period in questions, October 21, 2014 through April 23, 2018. Dr. Schaffzin opined the claimant could never climb

3

ladders, ropes, or scaffolds. The claimant described double vision, diplopia, as well as spinning vision. Dr. Schaffzin opined the claimant should avoid heights and dangerous machinery. The claimant could probably avoid hazards if she moved very slowly. Dr. Schaffzin opined the claimant could constantly use near and far acuity. She can occasionally use depth perception. She can never drive commercially. Dr. Schaffzin testified the claimant would have issues with balance. Dr. Schaffzin opined she could occasionally balance. Dr. Schaffzin opined the claimant could occasionally lift 20 pounds and frequently lift 10 pounds due to her double vision and it is supported by the claimant's testimony. Dr. Schaffzin testified that he did not think the evidence addresses the claimant's ability to lift and how much she could lift.

(ECF No. 6, PageID #: 810).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

Kathleen Zielinski, M.D., evaluated the claimant on December 18, 2014 (Exhibits 4F and 11F). It was not nystagmus was stable. She was to keep her present glasses since she seems to be stable. The claimant reported she was having trouble driving at night. The claimant sometimes goes without her glasses. On March 25, 2015, the claimant was seen for a 3-month follow-up for her diplopia. Exam noted "best corrected vision was 20/25 in the right eye and 20/400- in the left eye. Lid and adnexa were normal bilaterally. Muscle balance was stable. Tearfilm was good debris. Conjunctiva was healing well bilaterally. Corneas were clear. Anterior chambers were deep and quiet. Irises were normal. There was 1+ nuclear sclerosis bilaterally. Anterior vitreous were normal. Left optic disc was pallor but no edema. The impression was transient diplopia, age-related nuclear cataract of both eyes, hypermetropia of both eyes, astigmatism of both eyes, presbyopia both eyes, and nystagmus." On April 29, 2015, the claimant was diagnosed in both eyes as multiple sclerosis, nystagmus, diplopia, and strabismus eye muscle surgery on December 26, 2013. She also listed optic neuritis in the left eye. The claimant's vision with best correction was 20/25 in the right eye and 20/200 in the left eye.

Dr. Zielinski noted on September 22, 2015 that the claimant was last seen the claimant on April 27, 2015 (Exhibit 7F). She was not on any ocular medication. She had not shown improvement with strabismus surgery. She experienced minimal improvement with prism glasses.

Dr. Zielinski evaluated the claimant on February 7, 2017 (Exhibit 15F). The claimant stated that she feels like nystagmus is worsening in the right eye. "Prism is causing things to look triple at night and never really brings objects together. Diplopia is the same. Everything looks dark with the lights on." She has cataracts. Exam noted she was alert and oriented x3. Best corrected visual acuity was 20/30-1 in the right eye and 20/400 in the left eye. Pressure was 14 in the right eye and 15

in the left eye. Tearfilm was good debris in both eyes. Conjunctiva was healing well in both eyes. Corneas were clear. Irises were normal. She had 1+ nuclear sclerosis in both eyes. Anterior vitreous' were normal. There was no edema or vascularization in the right optic disc. There was no pallor but no edema in the left optic disc. Macula was normal contour and reflex in both eyes. Periphery was flat and attached 360 degrees. The impression was anterior optic neuritis. The claimant was prescribed new glasses.

The claimant has a long-standing diagnosis of multiple sclerosis. The medical evidence of record shows claimant saw neurologists Edward Westbrook, M.D., (Exhibit 1F) and Betsy Garrett, D.O. (Exhibits 8F and 16F). John Andrefsky, M.D., examined the claimant on February 9, 2017 (Exhibit 14F).

Dr. Westbrook evaluated the claimant on October 21, 2014. The claimant reported that her double vision had improved with prisms in her glasses but had not totally gone away. She stated she had trouble remembering names and exactly with whom she has worked. On physical exam, she was bright, alert, appropriate, executive, and articulate. Her husband accompanied her and did not feel she was having major cognitive problems. She has diplopia on gaze to the left but no difficulty on looking up. The remainder of cranial nerves were basically normal. Motor exam revealed normal strength tone and coordination. Reflexes were perhaps slightly minimally increased on the right. She walked well (Exhibit 1F).

Magnetic resonance image (MRI) of the brain on October 29, 2014, showed multiple demyelinating foci compatible with multiple sclerosis that had not changed measurably in size or number in the interval since the previous exam (Exhibits 1F:13; and 2F:12).

Betsy Garratt, D.O., evaluated the claimant on November 11, 2015. It was noted the claimant was switching care from Dr. Westbrook. The claimant reported she had not driven on the highway for one year. She had improved over the summer and was driving around the area. She still has double vision. On neurologic examination, the mental status was unremarkable to informal testing. She related her history in quite good detail with no obvious deficit of attention, memory, or language. Fine finger movement and rapid alternating movements were done well in both hands. She had a normal gait, including tandem gait and heel and toe walking. Dr. Garratt reviewed the October 2014 MRI and did not note significant changes (Exhibit 8F).

John Andrefsky, M.D., evaluated the claimant on February 9, 2017 (Exhibit 14F). The claimant stated that her double vision was constant. She sometimes had difficulty with balance when at the gym. She had not fallen, but she complained of foot pain. On physical examination, the claimant was oriented to person, place, and time. Both recent and remote memory were intact. Motor exam was normal. Muscle bulk and tone was normal in both the upper and lower extremities. Muscle strength was 5/5 in the distal and proximal muscles in both upper and lower extremities. Her

gait was stable with a normal base, normal arm swing, and normal speed. She was stable from a neurological standpoint. She was still having issues with vision and balance.

The next visit in the record to Dr. Garratt occurred on May 15, 2017. Dr. Garratt noted the claimant had seen Dr. Andrefsky while Dr. Garratt was on leave. Dr. Andrefsky ordered an MRI of the brain for further evaluation of her multiple sclerosis. At that time claimant was having the persistent double vision that was essentially unchanged. However, claimant reported worsening symptoms of lower extremity fatigue on May 15, 2017. She was not able to get through her entire exercise class. On physical exam, there was rotational nystagmus at primary gaze seen in the left eye. Motor examination revealed normal tone and bulk in the upper and lower extremities bilaterally. There was full strength in the proximal and distal muscles of the upper and lower extremities bilaterally. Deep tendon reflexes were very slightly brisk throughout however symmetric. Gait was normal. Dr. Garratt reviewed the most brain MRI and did not see significant changes (Exhibit 16F:6-8).

The claimant returned to see Dr. Garratt on June 8, 2017. She continued to have lower extremity fatigue when she exercises. On neurologic examination, the mental status was unremarkable to informal testing. The history is related in quite good detail with no obvious deficit of attention, memory, or language. Fund of knowledge was adequate. Orientation was intact to person, place, and time. On physical exam, there was rotational nystagmus at primary gaze seen in the left eye. Motor examination revealed normal tone and bulk in the upper and lower extremities bilaterally. There was full strength in the proximal and distal muscles of the upper and lower extremities bilaterally. Deep tendon reflexes were very slightly brisk throughout however symmetric. Gait was normal (Exhibit 16F:1-4).

. . .

Anderson Hu, D.O., performed a consultative internal medicine examination on June 13, 2015 (Exhibit 5F). The claimant is married, and she has 1 child. She has 1 glass of wine per week. Her typical daily activities consist of activities inside the house. Exam. Noted she was in no acute distress. Fundoscopic exam was normal. No oropharyngeal erythema, exudate, or other lesion. Tympanic membranes were pearly without erythema bilaterally. No lesions in the nares. Pupils were equally round and reactive to light. There was prominent left eye nystagmus. Extraocular movements were intact. Visual acuity appeared grossly normal with intact visual fields by confrontation with the right eye. Left eye visual acuity was not able to demonstrate any peripheral visual fields and was markedly decrease. She had a regular heart rate and rhythm without murmurs, rubs, or gallops. The lungs were clear to auscultation and percussion bilaterally with no wheezes, rales, or rhonchi. There was no clubbing, cyanosis, or edema in the extremities. She was alert and had appropriate eye contact, speech, and mood. Memory and concentration were normal. Cranial nerves were grossly intact. She had a symmetric steady gait. Hand

eye coordination was good. Sensory examination was normal to pinprick and light touch throughout. Straight leg test was negative bilaterally. Reflexes were 2+ throughout. Musculoskeletal exam noted no joint swelling, erythema, effusion, or deformity. She was able to lift, carry, and handle light objects. She was able to squat and rise from that position with ease. She was able to rise from a sitting position without assistance and hand no difficulty getting up and down from the exam table. She was able to walk on heels and toes. Tandem walking was normal, and she could hop on one foot bilaterally. She could dress and undress adequately well and she was cooperative during the exam. Uncorrected far vision was 20/40 in the right eye, 20/>200 in the left eye, and 20/40 in both eyes. Strength and range of motion were within normal limits bilaterally. Nystagmus is prominent in her left eye, and she is only able to differentiate shadows and large movements with the left eye. Vision in her right eye is currently acceptable but based on the claimant's reports, the right eye is starting to decrease in acuity. She answered questions appropriately and within reason. The impression was nystagmus and blindness in her left eye from multiple sclerosis. Dr. Hu opined that the claimant is able to walk for over an hour, sit for more than an hour at a time, stand for over an hour and lift 10 pounds. She does not have substantial physical limitations except for her vision which is markedly decreased in her left eye and worsening in her right from the progression of her multiple sclerosis. Her medical conditions seem well controlled on current medications and there are no acute symptoms that would suggest otherwise.

(ECF No. 6, PageID #: 810-13).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2021.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 21, 2014 through April 23, 2018 (20 CFR 404.1571 et seq.).

3. From October 21, 2014 through April 23, 2018, the claimant had the following severe impairments: loss of central visual acuity, multiple sclerosis (MS) and affective disorders (20 CFR 404.1520(c)).

4. From October 21, 2014 through April 23, 2018, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that from October 21, 2014 through April 23, 2018, the claimant had the residual functional capacity to perform

light work as defined in 20 CFR 404.1567(b) except: She can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can stand or walk 6 hours of an 8- hour workday. She can sit for 6 hours of an 8-hour workday. She can constantly push, pull, and use foot pedals. She can frequently climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance. She can frequently stoop, kneel, crouch, or crawl. There are no manipulative limitations. She can constantly use near and far acuity with both eyes. She can occasionally use depth perception with the left eye and constantly with the right eye. She can constantly use accommodation and color vision. She can frequently use field of vision with the left eye and constantly with the right eye. She must avoid commercial driving. She can read large print, but she cannot read small print. She is limited to work where depth perception and peripheral vision are not necessary for the performance of job duties. There are no communication limitations. She must avoid all exposure to workplace hazards and heights. She can respond appropriately to supervision, coworkers, and usual work situations. She can deal with changes in the work settings. She can focus attention on work activities for at least 2 hours at a time and she can stay on task at a sustained rate such as initiating and performing a task that they understand and know how to do. She can work at an appropriate and consistent pace, and she can complete tasks in a timely manner. She can ignore or avoid distractions while working. She can change activities or work settings without being disruptive.

6. From October 21, 2014 through April 23, 2018, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 25, 1963 and was 51-54 years old between October 21, 2014 through April 23, 2018, which is defined as an individual closely approaching advanced age (20 CFR 404.1563).

. . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. From October 21, 2014 through April 23, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 21, 2014 through April 23, 2018 (20 CFR 404.1520(g)).

(ECF No. 6, PageID #: 805-06, 808, 817-819

**V. Law & Analysis**

   **A. Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

However, even when there is substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Similarly, an ALJ's decision cannot be upheld, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*,

9

774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant raises a single issue on appeal, asserting that the "ALJ's RFC is contrary to law because it does not accurately describe the full limiting effects of Plaintiff's impairments as established by her testimony, confirmed by the record generally and by opinion evidence." (ECF No. 8 at 10). Within this argument, Claimant challenges the ALJ's treatment of opinions from Dr. Kathleen Zielinski, Dr. Anderson Hu, Dr. John Andrefsky, and Dr. Lawrence Schaffzin. (*Id.* at 11-19). Because, as described below, the Court concludes the ALJ erred in considering the lifting limitations set forth in Dr. Zielinski's opinion, remand is required.

Under the treating source rule,[1] an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *2.

> If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.

*Blakley*, 581 F.3d at 406; *see also* § 404.1527(c)(2). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency

---

[1] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.927. However, Wohler filed her claim before the revision took effect such that the treating source rule applies.

specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96-2p, 1996 WL 374188, at *5). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

Here, the ALJ considered two separate opinions from Dr. Zielinski. (*See* ECF No. 6, PageID #: 814-15). The second opinion, a February 7, 2017 Vision Impairment Medical Source Statement, indicated that Claimant could rarely lift and carry twenty pounds and occasionally lift and carry ten pounds. (*Id.* at PageID #: 482). The ALJ assigned "great weight" to this portion of the opinion "because it is consistent with a light residual functional capacity as assigned by [him]." (*Id.* at PageID #: 815).

Claimant asserts that although the ALJ gave "great weight" to Dr. Zielinski's lifting limitations, the assigned RFC was less restrictive. (ECF No. 6 at 15). Claimant argues that clarification is needed because "sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files and small tools" and "the difference between light and sedentary work is dispositive in this case" under the "grid rules" since Claimant was "closely approaching advanced age." (*Id.* at 12, 15-16).

12

The Court agrees with Claimant that clarification is needed. Under the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Thus, Dr. Zielinski's finding that Claimant could only *occasionally* lift and carry ten pounds is more restrictive than light work under the regulations. Despite assigning "great weight" to Dr. Zielinski's lifting limitations, the RFC did not include these limitations in the RFC but rather found that Claimant could "lift and carry 20 pounds and *frequently* lift and carry 10 pounds." (ECF No. 6, PageID #: 808 (emphasis added)). The ALJ did not explain why he did not adopt Dr. Zielinski's limitations. The failure to do so is especially relevant given that the vocational expert testified that an individual who could only occasionally lift ten pounds would be limited to sedentary work (*Id.* at PageID #: 841) and, because Claimant was "approaching advanced age," a finding of sedentary work would dictate of a finding of disabled unless she had transferrable skills, an issue the ALJ did not address. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rule 201.09-201.16.

The Commissioner argues that "[d]espite the confusing wording of the ALJ's analysis, the limitation to light work was nevertheless reasonable given the completely normal physical examinations, which Plaintiff declines to acknowledge in her argument." (ECF No. 10 at 10). However, failure to identify reasons for discounting the opinion of a treating physician "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. The ALJ failed to build an accurate, logical bridge between Dr. Zielinski's opined lifting restrictions and the RFC. Accordingly, remand is required.

Claimant argues that "in situations like here, where the claim has been pending for an extraordinary amount of time, where the evidence cannot change on remand, and where the

13

claimant has clearly established her entitlement to benefits, reversal with an award of benefits is the most appropriate disposition of the case." (ECF No. 8 at 20).

Under Sixth Circuit precedent:

> [R]emand for an immediate award of benefits may be made under sentence four of § 405(g) "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Heckler*, 771 F.2d 996, 973 (6th Cir. 1985)).

*Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th Cir. 2015). The Court recognizes that it has been approximately nine years since Claimant filed her initial application and is sympathetic to her desire for finality in this case. However, "there is strong evidence of disability, but that . . . evidence is not overwhelming and evidence to the contrary is not lacking." *Id.* For example, while Claimant relies on opinions assigning significant limitations, the opinions from the State agency consultants contain less restrictive limitations consistent with the RFC and the ALJ indicated that "[e]xams from 2014 to 2017 note normal gait, normal strength, and normal tone." (ECF No. 6, PageID #: 154-84, 813). Thus, contrary evidence exists and it is for the ALJ to weigh the evidence and make a disability finding that complies with the relevant regulations. As such, remand for further proceedings is appropriate.

## VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: March 19, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

14